Deadeeick, J.,
delivered the opinion of the court.
Plaintiff instituted this action of' ejectment in the Circuit Court of Knox county, in January, 1870.
*319 "Verdict and Judgment were rendered against him, and he has appealed in error to this court.
The parties are sons of Francis Bounds, and both claim title under him, the plaintiff, under a deed of 3d January, 1859. The defendant claims that he was placed in possession of a tract of 172 acres (75 of which is sued for in this action) by his father, in March, 1844, who had it surveyed and the boundaries marked, and that he has ever since claimed the same adversely and held possession thereof up to the boundaries designated by the survey made by his father’s directions by Armstrong. This 172-acre tract was part of a larger tract, and at the same time two other tracts were surveyed and marked, one for the plaintiff and another for another son of the said Francis, Sr. ISfo deeds or obligations for title were ever made to any of his sons by the said Francis, Sr., except the deed of 3d February, 1859, for 75 acres of the 17 2-acre tract, which was made to the plaintiff. The defendant, however, insists that his possession — which he claims to have been adverse for more than thirty years, claiming up. to lines of survey made by Armstrong, a surveyor — vests him with the title, or at least bars any action against him for the recovery of said land; and that being in the adverse possession of the land sued for at the time of the execution of the deed of 3d January, 1859, under which plaintiff claims title, the deed was- champertous, and the suit should have been dismissed by the court. The defendant proved that the surveys for the three •sons of Francis, Sr., were in the handwriting of Rob *320 ert Armstrong, deceased, who was a surveyor. These surveys purport to have been made, respectively — : “March 6, 1844, surveyed for J. W. Bounds 171 acres, beginning at an elm,” and calling for course, distance and natural objects, to the beginning; “ March 6, 1844, surveyed for Wm. Bounds” (the defendant) 172 acres, beginning at an elm, with calls of course and distance and for natural objects, to the beginning; and “March 15, 1844, surveyed for F. Bounds (plaintiff) 90 acres,” with similar calls to the beginning. Each survey is accompanied with a diagram of the land surveyed. A. W. Armstrong proved that these papers were in the handwriting of his father, Robert Armstrong, who was a surveyor, and that the same were found among his papers after his death, which occurred before the commencement of this suit. The defendant then proposed to introduce the survey and diagram purporting to have been made by said surveyor for plaintiff and the one for himself as evidence in this cause, to which the plaintiff objected, on the ground that the genuineness of said papers had not been shown, and because the same were objectionable as hearsay. Thereupon defendant, by his counsel, stated that he “offered said papers merely as corroborative evidence, to be taken in connection with other evidence, to establish the fact that the certificate of survey had been made, which is alleged to have been given to defendant by his father and lost, a copy of which is marked “Exhibit A” to the defendant’s affidavit, and which defined the boundaries claimed by defendant. The court overruled the- objection of *321 the plaintiff, and allowed the papers to be read and testimony to be given by witness concerning them “only for the purpose stated by defendant’s counsel.” The affidavit of defendant states that his father, in March, 1844, caused Robert Armstrong, a surveyor, to run off, plat and survey the three tracts for his three sons, and gave to each a plat of the tract allotted to him, with a description thereof, and a certificate of survey made and signed by said Robert Armstrong; that affiant held under said plat and certificate, and that it has been unintentionally lost or mislaid by affiant, who has made diligent search for the same but cannot find it; that it is still his property, and that he has never released, relinquished or forfeited any of his rights thereunder, but still claims under it. The affiant then proceeds to state that a. paper, which is marked “Exhibit A” to said affidavit, “is a substantial and accurate copy of the said plat, description and certificate.” This he states he knows from “his own intimate knowledge of the contents of said lost paper, and of the boundaries of the land in controversy,” as well as from the original description of survey and plat of all three of the tracts made, by said Robert Armstrong.
To the reading of this “Exhibit A” to the affida-. vit to the jury the plaintiff excepted, upon the ground that the contents of a lost paper cannot be established by an ex parte affidavit. But the exception was overruled and the affidavit and “Exhibit A” were allowed to'•be read — the defendant proposing to account for the loss of the original paper by the affidavit, *322 and supply and prove its contents by the proof already offered and to be offered in the cause. < The court, for this purpose, allowed the affidavit and “Exhibit A” to be read.
It is assigned as error by plaintiff — 1, that the notes of survey by Robert Armstrong, found amongst his papers, were improperly allowed to go to the jury; and 2, that “Exhibit A” to the affidavit of defendant, being the survey plat and certificate of said survey, as stated in the affidavit, were likewise improperly allowed to go to the jury.
Two specific objections to the competency of the notes of survey found with Robert Armstrong’s papers, were taken in the court below, and are insisted on here: 1. That their genuineness had not been established. 2. The papers themselves were mere hearsay.
As to the handwriting of Robert Armstrong, there was certainly sufficient evidence to be submitted to the jury, and there being none to the contrary, as to the fact that the notes of survey were in his handwriting, we think it sufficiently established; but whether they were made under the circumstances and for the purposes insisted on by defendant, or were admissible as evidence at all, is another question. Plaintiff insists that these “notes of Armstrong,” as being hearsay evidence of the fact proposed to be proved by them, are inadmissible. The purpose for which they were offered, was that they might be considered by the jury “as corroborative and circumstantial evidence to establish the fact that the certificate of survey had been made” which is alleged to have been given to *323 defendant by his father and lost, of which “Exhibit A” is a copy. It is proposed to prove by these notes that “Exhibit A” had been made. Those describing the land claimed by defendant, are not signed by Armstrong, — are simply a written statement, not under oath, in the handwriting of Armstrong, beginning with the words, “March 6, 1844, surveyed for Wm. Bounds,” then giving a description of the land. These notes make no reference to the lost paper, and there is nothing in them which shows the contents or existence of the lost paper sought to be set up by them. They are liable to the further objection, that they are, at most, but hearsay evidence of a fact susceptible of being proved by witnesses. We are of opinion, therefore, that they were improperly admitted to the jury as evidence.
The affidavit of defendant states with sufficient distinctness, the existence of a lost paper — its loss and his diligent and unsuccessful search for it. This was sufficient to authorize the introduction of proof of its contents, but it was not proper upon the affidavit, only, to allow what was represented therein, as a copy, to go to the jury. The defendant should have been examined as a witness before the jury, subject to the right of cross examination by the adverse party, to have made his statements evidence. If the land sued for was in fact surveyed, and metes and bounds distinctly defined by a certificate of the surveyor, for the defendant, and this was delivered to him by his father, intending the land as a gift, and the certificate of survey as a. muniment of title and *324 evidence of the boundaries, and defendant took possession claiming as owner, or thenceforth claimed the land under said certificate of survey to and with the boundaries thereof, with the knowledge of his father, such holding would be adverse to the extent of guch boundaries.
It has been repeatedly held by this court, that a mere naked possession, or the holding as a trespasser without excuse, and without title, legal or equitable, valid or invalid, or by some kind of writing by which to determine the extent of the possession, must be restricted to the enclosures actually made: 5 Sneed, 307.
But an unregistered deed, title bond or entry, though there has been no survey, furnished evidence of the extent of the possession; and a certificate, purporting to have been issued by the County Court of Cumberland county, Kentucky, where it was supposed the land lay, was, in connection with parol evidence, admissible as defining the extent of the defendant’s possession, though inadmissible as evidence of title: 9 Hum., 339.
For. the errors hereinbefore indicated, the judgment will be reversed and the cause remanded for a new trial.